Levi M. Sayles, Plaintiff, v. Chicago, Rock Island and Pacific Railroad Company, et al., Defendants.
Chicago, Rock Island and Pacific Railroad Company, a Corporation, Third Party Plaintiff-Appellant, v. The Sherwin-Williams Company, a Corporation, Third Party Defendant-Appellee.

### Gen. No. 50,881.

First District, Fourth Division.
November 27, 1968.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush and John W. Kearns, Jr., of counsel), for appellant.

Schiff, Hardin, Waite, Dorschel & Britton, of Chicago (James B. O'Shaughnessy and Peter V. Fazio, Jr., of counsel), for appellee.

ON REHEARING

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

A suit had been brought by Levi M. Sayles against the Chicago, Rock Island and Pacific Railroad Company (hereafter referred to as the Railroad) and two of its agents. Sayles was an employee of the Sherwin-Williams Paint Company (hereafter referred to as the Industry). His original suit had been settled upon the payment to

him of $65,000 by the Railroad. The Railroad had a third-party suit against the Industry, based upon an indemnity contract entered into between the Railroad and the Industry. The trial court found in favor of the Industry, and from that judgment this appeal is taken.

In order to decide the case it is necessary to interpret the indemnity contract. The contract was entered into on December 15, 1950, and it related "to the ownership, maintenance, operation and use" of side tracks at the Industry's plant on Chicago's south side. Section 1 of the contract provided the following:

> "Said tracks to be owned, maintained and operated hereunder are shown by solid red and yellow lines on the blue print marked Exhibit 'A', which is attached hereto and made a part hereof. Said tracks have been designated by numbers and the lengths of those portions colored in red and the lengths of those portions colored in yellow and the total length of each of said tracks is also shown on said Exhibit 'A'. Said tracks shall, for convenience, be hereinafter referred to as *'track.'* " (Emphasis supplied.)

Section 5 in pertinent part is as follows:

> "The Industry also agrees to indemnify and hold harmless the Railroad for loss, damage, or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation, while on or about said track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.
>
> "The Industry shall not be obligated to indemnify or hold harmless the Railroad for loss or liability

caused from the sole negligence of the Railroad, except fire as set forth above."

Section 6 of the contract is as follows:

*"The Industry shall not* erect or allow to be erected, any building, structure or fixture, or *place material or obstruction of any kind,* or make any excavation *without giving a clearance of at least eight (8) feet* from the center line of said track and head room of not less than twenty-one (21) feet six (6) inches above the top of the rails. The faces or edges of freight platforms not higher than four (4) feet above the top of the nearest rail of said track shall not exceed five (5) feet eight (8) inches from the center line of said track except when such platforms have horizontal clearances of eight (8) feet from the center line of said track. All windows, doors, or gates shall be of the sliding type, or shall open toward the inside of the building or enclosure when such building or enclosure is so located that the said windows, doors or gates, if opening outward, would, when opened, swing closer than eight (8) feet to the center line of said track. If by statute or order of competent public authority a greater or other clearance shall be required than provided in this section, then the Industry shall immediately comply with such order or statute. *The Industry for itself, its successors and assigns assumes all responsibility for and agrees to protect, indemnify and save harmless the Railroad* and the successors, lessees and assigns thereof, from and against *all loss, damage and expense caused by, or arising out of, or contributed* to by the erection or presence of any building structure or fixture, or placing, or presence of material or obstruction of any kind or making, or presence of any excavation at any

39

place prohibited by this section." (Emphasis supplied.)

Four years after the contract was signed, and while it was in full force, an accident occurred on the side tracks at the Industry's plant. Sayles was injured and filed a complaint against the Railroad and its agents on April 19, 1956. On May 22, 1956, a third-party complaint was filed by the Railroad against the Industry. The original complaint filed by Sayles against the Railroad was settled for $65,000. Both parties to this appeal have stipulated that the amount of the settlement is reasonable.

In the third-party complaint as amended, the Railroad alleges that the Industry placed or caused to be present a tank car which was less than eight feet from the center line of the track upon which a train was operating, and that the Industry by so doing obstructed the track upon which the train was operating, in violation of Section 6 of the indemnity contract, and so caused the tank car to come into collision with the Railroad's train, thereby causing the injuries to the plaintiff. Both the track on which the tank car was placed and the track on which the Railroad was operating its train were owned and maintained by the Industry.

The Railroad relied on the indemnity contract of December 15, 1950, and prayed that the Railroad shall have judgment against the Industry for any sum which may be recovered by Sayles against the Railroad. The Railroad also prayed that it be allowed costs.

The third-party complaint of the Railroad was answered by the Industry, in which answer the Industry denied that Section 6 of the indemnity contract is applicable, but alleged that Section 5 of the agreement is applicable. The answer denies that a tank car on the track constitutes an obstruction under proper construction of all the pertinent portions of the indemnity agreement, and alleges that the collision resulted from the

40

positive acts of negligence or wilful and wanton misconduct of the Railroad by its agents and servants.

The trial court heard the case on stipulation filed on June 1, 1965, between the Railroad and the Industry pursuant to court order. The stipulation provided in part:

"2. On January 28, 1955, Levy [sic] Sayles, the Plaintiff in the original case, was injured and lost a leg in an accident occurring on the premises of his employer, the Industry. At the time of the accident he was engaged in cleaning a tank car, which was one of two tank cars on the tank car cleaning track. These cars originally had been delivered by the Railroad to the car cleaning track. After they were delivered they were under the control of the Industry. All of the trackage relevant to the issues in this case was owned by the Industry. Earlier that day the Industry had requested the Railroad to move two railway cars loaded with coal from its warehouse to its boiler room. To effect this move it was necessary for the Railroad to push these cars along tracks 22 and 23 into the boiler room, which movement was being effected at the time of the accident. Previous to the accident, Sayles desiring to move the two tank cars in a southerly direction got a co-employee with a caterpillar tractor to shove these cars to the south. Sayles directed the movement personally and gave the stop signal. He stopped the cars far enough to the south so that the southeast corner of the southernmost tank car fouled track 23 and the accident was caused when the northwest corner of the leading coal car struck the corner of the tank car that was so protruding. The moving train was under the sole control of the Railroad, and the switch was lined for track 23 when the train entered the Industry premises."

On June 17, 1965, the court entered an order in which it stated that the primary issue presented for adjudica-

41

tion was an interpretation of Section 6 of the indemnity agreement. The court found that a car on the track cannot be an obstruction within the language and meaning of Section 6 of the agreement, and that the tank car on track 22 was not an obstruction of track 23 within the language and meaning of Section 6. In its order of July 6, 1965, the court reiterated its finding that a car on the track is not an obstruction within the meaning of Section 6 of the indemnity agreement, and the court included in its order the following statement:

"(a) In the event this Court's finding that a car on track is not an obstruction is reversed on review that the railroad third party plaintiff herein is totally exonerated of liability to the plaintiff and the third party defendant reimburse the third party plaintiff for such sums as may have been paid to the plaintiff and or the intervener herein by the third party plaintiff plus the third party plaintiff's expenses incurred by the event.

"(b) In the event this Court's finding that a car on track is not an obstruction is affirmed on review that Section 5 of the aforesaid sidetrack agreement controls the responsibility of the parties and liability to the plaintiff."

In contingency (b), just quoted, the trial court further found that the Railroad and the Industry were "jointly and concurrently negligent in the occurrence and accordingly jointly and concurrently liable to the plaintiff [Sayles] within Section 5 of the sidetrack agreement"; that the Industry should reimburse the Railroad for one-half the sum paid to Sayles by the Railroad; and that the Railroad is not entitled to reimbursement for its expense incurred. The court further found that the Railroad's expenses were in the sum of $5,000. The two agents of the Railroad joined as defendants were dismissed.

On July 21, 1965, by leave of court, the Railroad filed an amendment to the third-party complaint in which it asked in the alternative for a finding under Section 5 of the indemnity agreement. The Industry filed an answer to the amendment. On July 21 the trial court entered judgment in favor of the Sherwin-Williams Company and against Chicago, Rock Island and Pacific Railroad Company on the third-party complaint. From this judgment the Railroad takes an appeal to this court.

In interpreting the contract between the parties it is first necessary to determine whether Section 6 is controlling. It must be borne in mind that according to Section 1 of the contract, the system of tracks on the Industry's property is to be designated by the single word "track." Section 6 provides that the Industry shall not "place material or obstruction of any kind, . . . without giving a clearance of at least eight (8) feet from the center line of said track . . . ." Defining the agreement, "said track" must have included the track on which the tank car in question was standing, as well as the track on which the train was moving.

The Industry points out in its petition for rehearing that the agreement contemplated that rolling stock would be moved from point to point on "said track." Obviously, rolling stock, wherever located on "said track," would be less than eight feet from the center line. Consequently, it could not have been the intent to apply the obstruction limitation to a car on any part of "said track." Furthermore, attention might be called to the fact that in none of the cases cited by the Railroad was it found that a piece of rolling stock constituted an obstruction. In Ohio & M. R. Co. v. Weber, 96 Ill 443, it is said at page 448:

> "'Rolling stock' embraces the *movable* property belonging to the corporation, and is declared personal property, for the purposes of taxation. By movable property is plainly meant such property as in

its ordinary use is taken from one part of the line to another, such as cars, locomotives and their attachments and usual accompaniments."

None of the cases cited concerned a railroad car standing on a railroad track.

Under Section 6 of the agreement in the instant case the contributory negligence of the Railroad is immaterial, as is that of the Industry. Applying that section, the obligation of the Industry would be absolute as distinguished from its liability under Section 5, which is predicated on a negligence theory. This court must hold that the tank car is not an "obstruction." Section 5, rather than Section 6, is applicable.

If we held that Section 6 was applicable it would follow that every railroad car left on any of the spur tracks would necessarily constitute an obstruction and that such a construction would negate the very purpose of the contract, since both parties entered into the contract for the intended purpose of moving rolling stock over the spur system.

We hold that Section 5 of the contract is the one under which this case must be decided. Under Section 5 there would be no liability of the Industry to the Railroad unless the Industry was in some way negligent in causing the injury, and then it would be jointly and concurrently liable only if the Railroad was also found to be negligent. Under the contract the Industry had a right to use all of the tracks in question.

In the stipulation between the parties it was set out that plaintiff, Sayles, in the original case was injured in an accident occurring while he was engaged in cleaning a tank car, one of two cars on the cleaning track. Prior to the accident, Sayles, desiring to move the two cars in a southerly direction, got a coemployee with a Caterpillar tractor to shove the cars to the south. He stopped the

44

cars far enough to the south so that the southeast corner of the southernmost tank car fouled track 23. Earlier that day the Industry had requested the Railroad to move two railway cars loaded with coal from its warehouse to its boiler room. To effect this move it was necessary for the Railroad to push these cars along tracks 22 and 23 into the boiler room, which movement was being effected at the time of the accident.

The engineer employed by the Railroad to handle the engine moving the coal-filled cars testified that the engine was shoving the cars ahead of it and that the steam was blowing all over the place from the cleaning track between the cars being shoved and the tank car; that as he got nearer to the tank cars it became impossible for him to see anything ahead. He testified that one of the men did not walk ahead of the cars, nor did he believe it was customary that one should.

In a deposition given by Arthur Van Ganeron, a fireman on the engine pushing the coal cars, he testified that at the time the wind was blowing the steam, he could see that there was a tank car, but could not see whether it was in the clear. He testified that there is always steam blowing at that place, but at this time it was blowing more than usual because the wind was strong, and the steam was blowing towards the coal cars; that in spite of that fact, he gave the sign to go ahead. He stated that when he proceeded he could not see whether the tank cleaning track was clear. On cross-examination he testified that after the impact he knew there were tank cars there but did not know it before then because he could not see on account of the steam, which first obstructed his vision when he was 50 feet away from the switch.

■■ We agree with the trial court's conditional finding that both the Industry and the Railroad were negligent. We would say that the Industry's placing of the tank cars on the cleaning track in such a position as to

foul or obstruct the free passage of a train on track 23 was definitely negligent. Furthermore, the Industry, in the process of cleaning the cars, generated the steam which obstructed the vision of the Railroad's train crew handling the coal cars. The Railroad, plunging into the cloud of steam at a time when the crew could not see what was ahead of them and could not know whether or not the track on which they were proceeding was obstructed, was also negligent. Many precautions could have been taken; they could have sent a man ahead to investigate, but they did not.

As we have pointed out, the trial court found conditionally that if Section 5 were to control, then the Railroad and the Industry were "jointly and concurrently negligent in the occurrence and accordingly jointly and concurrently liable to the plaintiff within Section 5 of the sidetrack agreement; that the third party defendant reimburse the third party plaintiff for one-half the sum paid to the plaintiff by the third party plaintiff; that the third party plaintiff is not entitled to reimbursement for its expenses incurred in the event."

We reverse the judgment and approve this finding of the trial court, remanding the cause for entry of an appropriate judgment.

Reversed and remanded with directions.

DRUCKER and ENGLISH, JJ., concur.